UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens,<br><br>Relator,<br><br>v.<br><br>Kipp Fesenmaier,<br><br>Defendant. | Case No. 20-cv-0704 (WMW/DTS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Kipp Fesenmaier's motion to dismiss the amended complaint of Relator The Cameron-Ehlen Group, Inc., doing business as Precision Lens (Precision Lens). (Dkt. 23.) For the reasons addressed below, Fesenmaier's motion to dismiss is granted.

## BACKGROUND

Precision Lens is a distributor of products related to ophthalmic surgeries. Fesenmaier worked for Precision Lens's corporate partner, Sightpath Medical, Inc., for approximately 15 years, including several years as its vice president. Fesenmaier is a *qui tam* relator in another ongoing False Claims Act (FCA) lawsuit in which Precision Lens is a defendant (Fesenmaier Litigation). *See United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2020 WL 4476427 (D. Minn. Aug. 4, 2020).[1]

---

[1] This Court may take judicial notice of the undisputed facts and procedural history of the Fesenmaier Litigation, as such facts are necessarily embraced by the amended complaint in this case. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

In March 2010, Fesenmaier reported to the FBI allegations that Precision Lens and its founder, Paul Ehlen, were providing kickbacks to physicians. In a document that he sent to the FBI, Fesenmaier provided specific factual allegations pertaining to these kickbacks. The FBI interviewed Fesenmaier in December 2011 and designated Fesenmaier as a "confidential human source" a short time later. Fesenmaier continued to communicate with the FBI about these allegations for several years thereafter.

Fesenmaier and his wife filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota on August 23, 2012. The Fesenmaiers worked with an attorney to prepare the required bankruptcy paperwork, including identifying their assets and liabilities. Shortly thereafter, the Fesenmaiers attended a meeting with the Chapter 7 trustee and responded to the trustee's questions about their assets and liabilities, including legal claims that might qualify as assets. The Fesenmaiers did not disclose as assets any anticipated FCA claims pertaining to the allegations Fesenmaier had reported to the FBI. The Fesenmaiers' bankruptcy case resulted in a discharge of $55,783.40 in medical and credit card debt on November 30, 2012. The bankruptcy case was closed on January 3, 2013, and the trustee was discharged.

In November 2013, Fesenmaier commenced the Fesenmaier Litigation against Precision Lens and several other defendants. In his complaint, Fesenmaier alleged that Precision Lens and others violated the FCA by paying kickbacks to induce the use of their products by Medicare beneficiaries. The allegations in Fesenmaier's complaint arise from the same conduct that Fesenmaier reported to the FBI beginning in March

2010. Fesenmaier allegedly claimed a right to 25 to 30 percent of any award as a "relator" in the Fesenmaier Litigation.

On August 21, 2017, the United States Attorney's Office for the District of Minnesota (Minnesota USAO) announced a settlement with Sightpath and its former CEO to resolve allegations against Sightpath in the Fesenmaier Litigation. Specifically, the Minnesota USAO announced that Sightpath and its CEO "agreed to pay more than $12 million to the United States to resolve kickback allegations under the False Claims Act." Six months later, the United States settled with another defendant in the Fesenmaier Litigation, who agreed to pay $2.9 million to resolve all claims against him. In total, the United States has recovered $14.9 million in the Fesenmaier Litigation, and Fesenmaier received approximately 19.5 percent of the settlement proceeds, which equals approximately $2,905,500.

Precision Lens moved for summary judgment in the Fesenmaier Litigation, arguing that Fesenmaier lacked standing to assert claims under the FCA because any such claims were assigned to Fesenmaier's bankruptcy estate before the Fesenmaier Litigation commenced. *Cameron-Ehlen Grp.*, 2020 WL 4476427, at *1. This Court rejected that argument because, even if the FCA claims in the Fesenmaier Litigation had become an asset of Fesenmaier's bankruptcy estate in 2012, any standing defect at the commencement of the Fesenmaier Litigation subsequently was remedied because the bankruptcy trustee relinquished the FCA claims to Fesenmaier in December 2019. *Id.* at *4–5. This Court concluded that Precision Lens's "challenge to Fesenmaier's standing implicates non-jurisdictional prudential standing and the real-party-in-interest

requirement" and that "the record establishes that Fesenmaier is the real party in interest with respect to the FCA claims he asserts in this case." *Id.* at *5.

Precision Lens commenced this FCA lawsuit against Fesenmaier in March 2020. After the United States of America declined to intervene, Precision Lens filed an amended complaint in April 2021. Precision Lens alleges that, because Fesenmaier did not list his FCA claims as assets in his 2012 bankruptcy petition, he did not have standing to assert such claims or recover any portion of the settlement proceeds in the Fesenmaier Litigation. For this reason, Precision Lens alleges, Fesenmaier's claims in the Fesenmaier Litigation were legally false and Fesenmaier has fraudulently retained money to which he is not legally entitled. Count I of the amended complaint alleges that Fesenmaier knowingly presented, or caused to be presented, a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(A). Count II of the amended complaint alleges that Fesenmaier knowingly made or used false records and statements material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(B). Count III of the amended complaint alleges that Fesenmaier has possession, custody, or control of money that belongs to the United States, in violation of 31 U.S.C. § 3729(a)(1)(D). And Count IV of the amended complaint alleges that Fesenmaier has knowingly concealed or improperly avoided an obligation to pay money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

## ANALYSIS

Fesenmaier moves to dismiss the amended complaint on three grounds. First, Fesenmaier argues that this case must be dismissed pursuant to the FCA's public-

requirement" and that "the record establishes that Fesenmaier is the real party in interest with respect to the FCA claims he asserts in this case." *Id.* at *5.

Precision Lens commenced this FCA lawsuit against Fesenmaier in March 2020. After the United States of America declined to intervene, Precision Lens filed an amended complaint in April 2021. Precision Lens alleges that, because Fesenmaier did not list his FCA claims as assets in his 2012 bankruptcy petition, he did not have standing to assert such claims or recover any portion of the settlement proceeds in the Fesenmaier Litigation. For this reason, Precision Lens alleges, Fesenmaier's claims in the Fesenmaier Litigation were legally false and Fesenmaier has fraudulently retained money to which he is not legally entitled. Count I of the amended complaint alleges that Fesenmaier knowingly presented, or caused to be presented, a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(A). Count II of the amended complaint alleges that Fesenmaier knowingly made or used false records and statements material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(B). Count III of the amended complaint alleges that Fesenmaier has possession, custody, or control of money that belongs to the United States, in violation of 31 U.S.C. § 3729(a)(1)(D). And Count IV of the amended complaint alleges that Fesenmaier has knowingly concealed or improperly avoided an obligation to pay money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

## ANALYSIS

Fesenmaier moves to dismiss the amended complaint on three grounds. First, Fesenmaier argues that this case must be dismissed pursuant to the FCA's public-

disclosure bar because Precision Lens publicly disclosed the underlying allegations and transactions before commencing this action. *See* 31 U.S.C. § 3730(e)(4)(A). Second, Fesenmaier argues that the amended complaint fails to state a claim on which relief can be granted and fails to sufficiently allege fraud. *See* Fed. R. Civ. P. 9(b), 12(b)(6). Third, Fesenmaier argues that Precision Lens is collaterally estopped from re-litigating issues that this Court decided in the Fesenmaier Litigation.

Fesenmaier first argues that Precision Lens is barred from asserting its FCA claims because Precision Lens publicly disclosed the underlying allegations before commencing this lawsuit. Precision Lens counters that the "original source" exception to the public-disclosure bar applies.

Under the FCA, a district court "shall dismiss an action or claim . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party." 31 U.S.C. § 3730(e)(4)(A)(i). If a public disclosure has occurred, dismissal is required unless, as relevant here, "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Although it is not jurisdictional, the FCA's "public disclosure bar is appropriately resolved on a motion to dismiss." *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 953 (8th Cir. 2017). In doing so, a district court may consider, in addition to the allegations in the complaint, any other "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *Id.* (internal quotation marks omitted).

5

Here, Precision Lens concedes that the allegations in its amended complaint were publicly disclosed in the Fesenmaier Litigation before Precision Lens commenced this action. As such, the FCA's public-disclosure bar is implicated. However, Precision Lens contends that it is an "original source" of the information alleged in the amended complaint, which is an exception to the public-disclosure bar.

An exception to the FCA's public-disclosure bar applies if the relator is an "original source" of the information underlying the FCA claim. 31 U.S.C. § 3730(e)(4)(A). As relevant here, the FCA defines "original source" as an individual who, before making a public disclosure, "has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based."[2] 31 U.S.C. § 3730(e)(4)(B). Precision Lens contends that it disclosed to the United States the information underlying the allegations in this case during Fesenmaier's September 2019 deposition in the Fesenmaier Litigation. But the parties disagree about whether that disclosure was "voluntary," as is required for Precision Lens to be an "original source."

The "clear intent" of the FCA "is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent." *United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 704 (8th Cir. 1995). As such, a person does not "voluntarily" disclose information to the government by "merely complying with the government's investigation" into alleged FCA violations. *Id.*

---

[2] The FCA includes a second definition of "original source," but it is undisputed that only the first definition is implicated by this case.

6

Numerous courts have concluded that information is not "voluntarily" disclosed to the government when "the government has identified the putative relator as being involved in the fraudulent activity and has initiated contact" because "the putative relator's further participation in the government's investigation is necessarily fueled by other forms of self-interest." *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 340–41 (3d Cir. 2005); *accord Barth*, 44 F.3d at 704 (concluding that putative relator was not an original source of information because the disclosure was precipitated by the government's fraud investigation); *Prather v. AT&T Inc.*, 996 F. Supp. 2d 861, 870 (N.D. Cal. 2013) (concluding that relator's disclosure to the government was not voluntary because there was "no indication that Relator would have approached the federal government absent" the government's ongoing investigation); *cf. Chicago ex rel. Rosenberg v. Redlfex Traffic Sys., Inc.*, 884 F.3d 798, 805–06 (7th Cir. 2018) (reaching same conclusion about voluntariness of disclosure in context of analogous false claims ordinance because relator's "disclosures were motivated purely by his own self-interest"). Even when not specifically compelled by a subpoena, a relator's disclosure of information is *not* voluntary when it is a product of the government's fraud investigation and "motivated by a desire to shift the focus of the fraud investigation from [the relator] to another party." *Paranich*, 396 F.3d at 341.

Here, Precision Lens's allegedly voluntary disclosure of information to the United States occurred during Precision Lens's deposition of Fesenmaier in the Fesenmaier Litigation, in which Precision Lens is defending against allegations of fraud. It would "undermine the voluntary provision requirement to allow a relator to extract the benefit

7

of a *qui tam* action [when] his participation in the investigation was precipitated by a subpoena and sustained by self-interest, with all indications suggesting that the relator would not have come forward otherwise." *Id.* Precision Lens's alleged disclosure of information clearly was motivated by Precision Lens's self-interested desire to defend itself in the Fesenmaier Litigation and shift the focus of that fraud investigation from Precision Lens to Fesenmaier. There is no indication that Precision Lens would have approached the federal government with this information—or even *learned* this information—absent the government's investigation of Precision Lens's conduct. As such, Precision Lens's purported disclosure does not meet the voluntary provision requirement so as to invoke the protection of the FCA's "original source" exception to the public-disclosure bar.

Moreover, even if Precision Lens had acted voluntarily, it did not disclose to the government the information on which the allegations in this case are based. The amended complaint alleges that Precision Lens "voluntarily disclosed or *caused to be voluntarily disclosed* that [Fesenmaier] failed to disclose his *qui tam* FCA action in his bankruptcy case." (Emphasis added.) Specifically, counsel for Precision Lens questioned Fesenmaier about publicly available bankruptcy documents during Fesenmaier's deposition in the Fesenmaier Litigation. At most, Precision Lens's counsel elicited testimony from Fesenmaier in the presence of an Assistant United States Attorney. This is not a disclosure from Precision Lens. To the extent that any material non-public information was disclosed to the United States during Fesenmaier's

deposition, that information originated from Fesenmaier's testimony, not from questions posed by Precision Lens's counsel.

For Precision Lens to be an "original source" of information, the relevant disclosed information must originate from Precision Lens. *See* 31 U.S.C. § 3730(e)(4)(B) (providing that the individual claiming to be an "original source" of information must have "voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based"); *Barth*, 44 F.3d at 704 (providing that an "original source" must have "been aware of" the possible fraud and must "bring the information to the government"). Indeed, the FCA's definition of "original source" does not include *causing another person* to disclose information in the presence of a government attorney. *See* 31 U.S.C. § 3730(e)(4)(B). To conclude otherwise would be contrary to the purpose of the FCA, "which is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent." *Barth*, 44 F.3d at 704. If Precision Lens knew about Fesenmaier's alleged fraud prior to Fesenmaier's deposition, Precision Lens was obligated to "bring such information forward at the earliest possible time" and Precision Lens failed to do so. *Id.* If, on the other hand, Precision Lens did *not* know about Fesenmaier's alleged fraud prior to Fesenmaier's deposition, then Precision Lens is not an "original source" of this information—Fesenmaier is the original source. In either event, Precision Lens cannot avoid application of the FCA's public-disclosure bar, because Precision Lens did not voluntarily disclose the information underlying its allegations in this case.

In summary, Precision Lens's FCA claims are precluded by the FCA's public-disclosure bar because the allegations in the amended complaint were publicly disclosed in the Fesenmaier Litigation and Precision Lens is not an "original source" of the underlying information. Accordingly, Fesenmaier's motion to dismiss is granted, and the amended complaint is dismissed with prejudice.[3]

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant Kipp Fesenmaier's motion to dismiss, (Dkt. 23), is **GRANTED**.

2. Relator The Cameron-Ehlen Group, Inc.'s amended complaint, (Dkt. 18), is **DISMISSED WITH PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 28, 2021                                s/Wilhelmina M. Wright
                                                      Wilhelmina M. Wright
                                                      United States District Judge

---

[3] In light of this conclusion, the Court need not address Fesenmaier's alternative arguments for dismissal based on collateral estoppel and failure to state a claim.